**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

RINEHOUSE RADIOLOGY, P.C.,

     Plaintiff,

          v.

MEDICAL IMAGING SPECIALISTS, P.C.
and ARUN C. JETHANI,

     Defendants.

CIVIL ACTION NO. 3:12-CV-470

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Plaintiff has sufficiently alleged the existence of a valid contract and Defendants' lack of privilege to interfere, the motion will be denied.

### I. Background

The facts as alleged in the complaint are as follows:

Plaintiff Rinehouse Radiology is a corporation located in Hazel Township, Pennsylvania. In around 2011, Rinehouse entered into negotiations with four businesses: Imaging Association of Hazleton, P.C. ("IAH"); Nuclear Imaging Associates of Hazleton, P.C. ("Nuc"); 101 South Church Street Properties, LLC ("101"); and Premier Radiology Associates, P.C. ("Premier") (collectively, the "Sellers"). IAH and Nuc provided radiology services at an office space owned by 101. Rinehouse and the Sellers were negotiating for Rinehouse to lease that space and purchase the assets of IAH and Nuc in order to continue the radiology services business. Rinehouse and the Sellers were also negotiating for Premier to manage the operations of IAH and Nuc during the course of their winding

down and dissolution.

Defendants Medical Imaging Specialists, P.C. ("MIS") and Arun Jethani served as advisors to the Sellers throughout the negotiations and were a primary contact for Rinehouse. Based on this relationship, they were privy to confidential information related to the negotiations.

The negotiations culminated in the drafting of three contracts: an asset purchase agreement between Rinehouse, IAC, and Nuc; a commercial lease agreement between Rinehouse and 101; and a management services agreement between Rinehouse, IAC, Nuc, and Premier. On about February 3, 2012, Rinehouse and the Sellers signed all three agreements. MIS and Mr. Jethani were aware that the contracts were executed.

After the execution of the contracts, MIS and Mr. Jethani approached the Sellers and offered to buy the assets and lease the property that were subject to the agreements between Rinehouse and the Sellers. MIS and Mr. Jethani used their position of trust with the Sellers and the confidential information they had obtained during the negotiations to convince the Sellers to repudiate their agreements with Rinehouse. On about February 13, 2012, the Sellers accepted a contract with MIS and Mr. Jethani and repudiated their agreements with Rinehouse. The conduct of MIS and Mr. Jethani was improper, intentional, and without privilege or justification. Rinehouse suffered damages as a result of the lost contracts.

Rinehouse filed suit in the Court of Common Pleas of Luzerne County, Pennsylvania, on February, 24, 2012. Its complaint contains a single count of tortious interference with existing contractual relationships. It seeks compensatory and punitive damages, as well as costs and attorneys fees. Defendants removed the case to the Middle

District of Pennsylvania on March 16, 2012.

On March 22, 2012, Defendants filed the instant motion to dismiss for failure to state a claim upon which relief can be granted. The motion has been fully briefed and is ripe for disposition.

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The pleading standard of Federal Rule of Civil Procedure 8 does not require "detailed factual allegations," but "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1959 (2009) (quoting *Twombly*, 550 U.S. at 555). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

Thus, when determining the sufficiency of a complaint, a court must undertake a three-part inquiry. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The inquiry involves: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry

3

are sufficiently alleged." *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000). Under Rule 12(b)(6), a dismissal based on the statute of limitations is appropriate only where the untimeliness of the claim is clear on the face of the complaint. *Bethel v. Jendoco Const. Corp.*, 570 F.2d 1168 (3d Cir. 1978) (citations omitted).

### III. Discussion

Rinehouse's complaint alleges that Defendants tortiously interfered with existing contractual relationships. Pennsylvania[1] has adopted the Restatement (Second) of Torts approach to this cause of action. *CBG Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 384 (3d Cir. 2004). Under Pennsylvania law, a plaintiff stating a claim for tortious interference with contractual relations must allege:

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct.

*Id.* (quoting *Crivelli v. General Motors Corp.*, 215 F.3d 386, 394 (3d Cir. 2000)); *see also Pawlowski v. Smorto*, 588 A.2d 36, 39-40 (Pa. Super. Ct. 1991).

Defendants move for dismissal of the complaint on two grounds. First, they argue that Rinehouse fails to allege a valid existing contract. Second, they argue that Rinehouse fails to allege that Defendants' actions lacked privilege and justification.

---

[1] Where, as here, a federal court sits in diversity, it must apply state law to the substantive issues. *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). The parties agree that Pennsylvania law applies in this case.

**A. Existing Contract**

Defendants first move for dismissal on the grounds that Rinehouse fails to allege a valid existing contract. Under Pennsylvania law, an enforceable contract exists "when parties reach a mutual agreement, exchange consideration and have set forth the terms of their bargain with sufficient definiteness to be specifically enforced." *Aircraft Guar. Corp. v. Strato-Lift, Inc.*, 103 F. Supp. 2d 830, 836 (E.D. Pa. 2000) (citing *USA Machinery Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999); *Estate of Hall*, 731 A.2d 617, 621 (Pa. Super. Ct. 1999); *Biddle v. Johnsonbaugh*, 664 A.2d 159, 163 (Pa. Super. Ct. 1995); *Dahar v. Grzandziel*, 599 A.2d 217, 220 (Pa. Super. Ct. 1991)). An agreement that omits some material terms and conditions will still be enforceable "as long as the parties agreed to all the essential terms and intended the contract to be binding upon them." *Yellow Run Coal Co. v. Alma-Elly-Yv Mines, Ltd.*, 426 A.2d 1152, 1155 (Pa. Super. Ct. 1981) (quoting *Bredt v. Bredt*, 326 A.2d 446, 449 (1974)). "[A] party's signature to a contract is designed to evidence his or her intention to be bound thereby." *Germantown Sav. Bank v. Talacki*, 657 A.2d 1285, 1289 (Pa. Super. Ct. 1995) (citing *Petrie v. Haddock*, 119 A.2d 45, 47 (1956)).

Defendants' motion will be denied because a review of the complaint and the three attached agreements establishes that Rinehouse properly alleges a valid existing contract. Defendants first claim that the asset purchase agreement is invalid because it is dated February 9, *see* Compl. Ex. A, while the Plaintiffs allege the contract was signed on February 3, 2012. This argument can be disposed of in short shrift: the Plaintiff's complaint clearly states the contract was formed "on or about February 3," *see id.* ¶ 11, and thus there is not actually a discrepancy regarding the dates. Defendants also argue that the

5

three alleged agreements are missing material terms such as the proposed effective and closing dates. But the three agreements submitted by Rinehouse contain the essential terms of the agreements, including: an identification of the assets and their purchase price; an identification of the property to be leased, the lease period, and rental price; and an explication of the duties of the manager and management fee. *See id.* Ex. A, B, C. The effective date and closing date are not essential terms whose absence makes it impossible for the contract to be specifically enforced. *See, e.g.*, *Field v. Golden Triangle Broad., Inc.*, 451 Pa. 410, 418-19 (Pa. 1973) (finding that closing date is not essential term because "where no time for performance is provided in the written instrument the law implies that it shall be done within a reasonable time"). Further, the three agreements are signed by the Sellers, which indicates that the Sellers intended to be bound. Thus, Rinehouse has met its burden of pleading the existence of valid contractual relationships, and Defendants' motion to dismiss on these grounds will be denied.

**B. Privilege/Justification**

Defendants also argue that the complaint must be dismissed because Rinehouse fails to sufficiently allege a lack of privilege or justification. "In the context of tortious interference with contractual relation claims, '[t]he presence of a privilege is not an affirmative defense, rather, the absence of such a privilege is an element of the cause of action which must be pleaded and proven by the plaintiff.'" *In re 400 Walnut Assocs., L.P.*, 454 B.R. 60, 77 (Bankr. E.D. Pa. 2011) (quoting *Bahleda v. Hankison Corp.*, 323 A.2d 121, 122-23 (Pa. Super. Ct. 1974)). To determine whether privilege exists, a court must consider the following factors:

(a) the nature of the actor's conduct,

(b) the actor's motive,

(c) the interests of the other with which the actor's conduct interferes,

(d) the interests sought to be advanced by the actor,

(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

(f) the proximity or remoteness of the actor's conduct to the interference

and

(g) the relations between the parties.

*Adler, Barish, Daniels, Levin & Creskoff v. Epstein*, 482 Pa. 416, 433 (Pa. 1978) (quoting Restatement (Second) of Torts § 767). The Restatement (Second) of Torts § 768 clarifies that a defendant's interference with his competitor's existing contract will be improper "if the contract is not terminable at will."

Defendants' motion to dismiss on these grounds will be denied. Defendants argue that the sole allegation in the complaint that establishes a lack of privilege is the complaint's statement that "there exists no privilege or justification to which Mr. Jethani and MIS's intentional and improper interference with Rinehouse's contractual relationship is protected." *See* Compl. ¶ 19. Defendants are correct that this is a conclusory statement that does not meet the pleading standards set out in *Iqbal* and *Twombly. See Iqbal*, 129 S. Ct. at 1959 (quoting *Twombly*, 550 U.S. at 555). However, Rinehouse's complaint also contains the factual allegation that Defendants knew that the Sellers had entered into a valid contract with Rinehouse, but purposely approached the Sellers anyway and used their position of trust and confidential information to convince the Sellers to repudiate the contract with Rinehouse, for the purpose of

interfering with the contract. These facts are sufficient to allege that Defendants acted

knowingly and intentionally and that their motive was interference and not the best

interests of the Sellers. At the summary judgment stage, Defendants may submit

further evidence proving that their conduct was privileged. But Rinehouse has

sufficiently alleged the lack of privilege such that the complaint properly states a claim

for intentional interference with contractual relations.

### IV. Conclusion

For the reasons stated above, Defendants' motion to dismiss will be denied. An

appropriate order follows.

 June 11, 2012                                         /s/ A. Richard Caputo
Date                                                        A. Richard Caputo
                                                              United States District Judge